**Kenneth HIGH, Plaintiff–Appellant,**

v.

**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 49A02–8806–CV–00244.

Court of Appeals of Indiana, First District.

Feb. 15, 1989.

---

Robert O. Williams, Covington, William V. Barteau, Speedway, for plaintiff-appellant.

Audrey K. Grossman, Treacy Grossman Sullivan & Jones, Indianapolis, for defendant-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Kenneth High appeals from the Marion Superior Court's grant of summary judgment in favor of United Farm Bureau Mutual Insurance Company. We affirm.

## FACTS

United Farm Bureau Mutual Insurance Company (hereinafter Farm Bureau) issued four (4) automobile insurance policies to Kenneth High, each covering a separate automobile. Each of these policies provided for uninsured motorist coverage in the amount of Twenty-five Thousand Dollars ($25,000), and all were in full force and effect when High was involved in an automobile accident with an automobile owned and driven by an uninsured motorist. High filed a claim under each of his four (4) automobile insurance policies for damages in excess of the total stacked coverage. Farm Bureau paid the highest amount under one (1) of the policies, but refused to pay under the other three (3) policies.

On August 6, 1986, High filed a complaint seeking payment under the other three (3) policies. On September 26, 1986, Farm Bureau filed a motion to dismiss which was denied on March 25, 1987. On June 26, 1987, High filed a motion for summary judgment. Farm Bureau filed a brief in opposition to High's motion for summary judgment on September 28, 1987. In addition Farm Bureau requested that summary judgment be granted in favor of Farm Bureau. On December 18, 1987, the trial court held a hearing on the motions for summary judgment. Farm Bureau filed its answer on January 13, 1988. On March 21, 1988, the trial court granted Farm Bureau's motion for summary judgment and entered judgment against High. High appeals this judgment.

## ISSUE

Whether the trial court properly granted Farm Bureau's motion for summary judgment?

## DISCUSSION AND DECISION

High argues the trial court improperly granted summary judgment in favor of Farm Bureau. On appeal, we use the same standard as the trial court in determining the propriety of the grant or denial of summary judgment. *Jones v. Marengo State Bank* (1988), Ind.App., 526 N.E.2d 709, 714. Accordingly, in assessing the propriety of summary judgment we must determine whether the record establishes that no material issue of fact exists and that the proponent is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C). The burden of establishing the propriety of summary judgment rests with the movant and all facts and reasonable inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Id.*

 In the present case, no material issue of fact exists. Rather, this case involves the issue of whether Farm Bureau is entitled to summary judgment based upon a clause in the insurance policies which precluded the stacking of uninsured motorist coverages. The clause in question provides as follows:

"OTHER INSURANCE—Under Part IV

. . . .

"Except as provided in the foregoing paragraphs, if the Insured has other uninsured motorists insurance available to him and applicable to the occurrence, the damages shall be deemed not to exceed the highest limits under any one policy of insurance available to the Insured. The Company shall not be liable for a greater proportion of any such loss to which the coverage applies than the

limit of liability hereunder bears to highest limits available to the Insured under one such policy."

Reply brief at 8. High argues that Indiana law provides for the stacking of uninsured motorist coverages, and relies on the law as reviewed in *Indiana Ins. Co. v. Ivers* (1979), 182 Ind.App. 482, 395 N.E.2d 820, *trans. denied.* High argues also that to the extent this law has been modified by statute, the language in the insurance policies did not unambiguously preclude the stacking of coverages. Farm Bureau argues, however, that the insurance policies clearly and unambiguously precluded the stacking of uninsured motorist coverages. Farm Bureau argues further that this clause is valid and enforceable under Indiana's Uninsured Motorists Statute, Indiana Code section 27–7–5 et seq. We agree with Farm Bureau.

In *Ivers,* Judge Neal opined as follows:

"Authority exists in Indiana which recognizes multiple recovery or 'stacking' of coverages in uninsured motorist situations. *Indiana Insurance Company v. Noble,* (1970) 148 Ind.App. 297, 265 N.E.2d 419; *Liddy v. Companion Ins. Co.,* (1979) [181] Ind.App. [16], 390 N.E.2d 1022; *United Farm Bureau Insurance Company v. Wolfe,* (1978) [178] Ind.App. [441], 382 N.E.2d 1018; *United Farm Bureau Insurance Company v. Runnells [Runnels ],* (1978) [178] Ind.App. [435], 382 N.E.2d 1015; *Jeffries v. Stewart,* (1974) 159 Ind.App. 701, 309 N.E.2d 448, *trans. denied.* These cases say, in effect, that where a person who is within the definition of an insured is injured through the negligence of an uninsured motorist, whether the person is a pedestrian, a passenger in another automobile, or a driver or a passenger in an insured automobile, and there is more than one policy available to him, such as separate policies on separate automobiles, he may be entitled to recover on all of the policies available to him up to the amount of his damages, but no more. There may be no double recovery."

*Id.* 182 Ind.App. at 485, 395 N.E.2d at 822–23. The cases referred to in *Ivers,* examined "excess-escape" or "anti-stack-

ing" clauses as applied to uninsured motorist coverage to determine if they were in derogation of public policy as embodied in the Uninsured Motorists Statute, I.C. § 27–7–5 et seq. *See e.g., Liddy v. Companion, Ins. Co.* (1979), 181 Ind.App. 16, 390 N.E.2d 1022; *United Farm Bureau Mut. Ins. v. Runnels* (1978), 178 Ind.App. 441, 382 N.E.2d 1015; *Jeffries v. Stewart* (1974), 159 Ind.App. 701, 309 N.E.2d 448, *trans. denied.* These cases determined that the legislative intent and public policy of the Uninsured Motorists Statute was directed at the minimum allowable policy coverage and not at limiting the injured party's allowable recovery. Thus, insurance companies were prohibited from limiting the uninsured motorists coverage under each separate policy to an amount less than the statutory minimum. *Runnels,* 178 Ind. App. at 439, 382 N.E.2d at 1017. However, the validity of the reasoning of these cases is questionable based upon the 1982 addition to the Uninsured Motorists Statute of Indiana, Indiana Code section 27–7–5–5, which provides in part as follows:

"(a) The policy or endorsement affording coverage specified in this chapter may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss, but in no event may coverage be less than the minimum set forth in IC 9–2–1–15."

The addition of this section to the statute is evidence of the legislature's intent at the initial enactment of the statute. *Seymour Nat'l Bank v. State* (1981), Ind., 422 N.E.2d 1223, 1226; *United States Fidelity and Guaranty Co. v. DeFluiter* (1983), Ind. App., 456 N.E.2d 429, 432, *trans. denied.* This section indicates that the legislature intended that this statute would ensure an insured would be provided with uninsured motorist coverage of at least the minimum amounts found in Indiana Code section 9–2–1–15, but would not ensure the right to stack uninsured motorist coverages. Thus, the legislature did not intend to preclude the use of anti-stacking clauses. In fact, the 1982 amendment specifically authorizes

anti-stacking provisions. By this amendment, the legislature changed the public policy of this state concerning anti-stacking clauses and such clauses no longer offend public policy. Therefore, regardless of whether an insured may seek to stack uninsured motorist insurance coverages as provided for in *Ivers*, we hold that under Indiana law an insurance company may limit uninsured motorist coverage with an anti-stacking clause.

High argues that even if Farm Bureau could have precluded stacking in accordance with I.C. § 27–7–5–5, the anti-stacking clause in the present policies did not effectuate such a limitation because it does not mirror the language of the statute, and is not clear, unequivocal and unambiguous. Specifically, High argues that because the anti-stacking clause did not use the language found in the statute, it is ambiguous. High argues also that the "other uninsured motorist insurance" language of the anti-stacking clause is ambiguous and relies on the reasoning found in *Glidden v. Farmers Auto. Ins. Ass'n* (1974), 57 Ill.2d 330, 312 N.E.2d 247. Thus, High argues that the anti-stacking clause should be construed in favor of himself and against Farm Bureau. High's arguments fail.

In *Glidden*, the Illinois Supreme Court held that an "other insurance" section of an insurance policy which attempted to prevent the stacking of "other uninsured motorist insurance" coverage was ambiguous as to insurance policies purchased by the insured from the same insurance company, because an insured would not reasonably contemplate that the clause would apply to policies bought from the same insurance company. *Id.* 57 Ill.2d at 336, 312 N.E.2d at 250. Accordingly, the court refused to enforce the anti-stacking clause. The reasoning in *Glidden*, however, was examined and rejected by the Arizona Court of Appeals in *State Farm Mut. Auto. Ins. Co. v. Williams* (1979), 123 Ariz. 455, 600 P.2d 759, as follows:

"In *Glidden*, as here, the insured had purchased three separate automobile insurance policies from one company, each policy having the face value coverage of $10,000 due to losses suffered as the result of injury by an uninsured motorist and each having an 'other insurance' clause. The insured, while a pedestrian, was injured by an uninsured motorist. While recognizing that the 'literal' meaning of these clauses would limit liability to $10,000, nevertheless, the court allowed recovery of $30,000. It reached this result as follows:

'When an insured purchases three distinct policies from an insurer, each providing the specified coverage, and pays a separate premium for each, does he reasonably contemplate that the "other insurance" clauses therein are effective to reduce his recovery to what he would have obtained under one policy? We think not. The apparent purpose of "other insurance" clauses is to make certain that one company does not pay a disproportinate amount of a loss which is to be shared with another company. There is no purpose in proration unless the "other insurance" is written by another company. The clause has no meaningful purpose when applied to coverage issued by one company to one insured. In this situation its meaning is ambiguous, and the clause should be construed in favor of the insured.' 312 N.E.2d at 250.

"In our opinion, this result is a pyramid of fallacious reasoning. First, if the 'literal' language of the clauses makes clear that liability for uninsured motorist coverage is limited to $10,000 or a pro rata share of that amount, we know of no reason why an insured, assuming he or she has read the clause, would contemplate anything else. Moreover, why the 'reasonable contemplation' of an insured who purchases three separate policies on three separate automobiles should be greater than the insured, as in *McCarthy*, [*v. Preferred Risk Mutual Ins. Co.*, 454 F.2d 393(9th Cir.1972)], who purchased two policies on one automobile, escapes us. Also, it is inconsistent to say that an insured 'contemplates' the other insurance policies as insurance

affording him coverage, but does not 'contemplate' that same insurance for purposes of activating the 'other insurance' clause.

"Second, the court's determination of the 'apparent reason' for the clause is naive. The sole purpose of the 'other insurance' clause is to decrease the liability of the insurer under the policy. The question is can this be legally accomplished and has the insurer clearly done so. Finally, we find it pure sophistry to say that two 'other insurance' clauses appearing in policies written by two separate insurers are unambiguous, but that the same clauses appearing in two policies issued by the same insurer are ambiguous. See dissent in *United Services Automobile Ass'n v. Dokter*, 86 Nev. 917, 478 P.2d 583 (1970)."

*Id.* 123 Ariz. at 458–59, 600 P.2d at 759. *Accord, Wagner v. State Farm Mut. Auto. Ins. Co.* (1985), 40 Cal.3d 460, 220 Cal.Rptr. 659, 709 P.2d 462. We find the reasoning of the Arizona court more persuasive. Thus, we find that the application of the "other uninsured motorist insurance" language of the anti-stacking clause is not ambiguous. Furthermore, although High correctly notes that an ambiguous clause in an insurance policy will be construed in favor of the insured, nothing in our case law or in I.C. § 27–7–5–5 requires an insurance company to draft an anti-stacking clause that tracks the language of the statute.

High argues last that the uninsured motorist anti-stacking clause is ambiguous and unenforceable because it was not placed under the most logical subheading in the insurance policy. High argues that since this clause excluded and/or limits coverage, it should have been placed under the "limitation of liability" or "exclusion" section, rather than the "other insurance" section of the insurance policies. Although placing of the uninsured motorist anti-stacking clause under another section may have made the uninsured motorist coverage clearer, the placing of this clause under the "other insurance" section did not make the uninsured motorist coverage unclear. Accordingly, we hold that the anti-stacking

clause is not ambiguous, and properly precluded the stacking of all other uninsured motorist coverages. Therefore, the trial court properly granted summary judgment in favor of Farm Bureau.

AFFIRMED.

ROBERTSON and HOFFMAN, JJ., concur.